Cuuhingham, Judge.
1. This is an action in the nature of ejectment, brought to test the title to the northwest quarter (%) of section twenty-four (24), township five (5) north, range forty-eight (48)"' west, in Yuma county. The plaintiff alleged’.ownership in fee simple, and that the defendant wrongfully withholds the land. The answer was a general denial only. . To prove his title the plaintiff introduced a government patent without objection, a trust deed by the patentee, a trustee’s deed based on the foreclosure of said trust deed, and a deed from the grantee named in the trustee’s deed. Or rather, it was stipulated that the said grantee had conveyed the land to plaintiff Howell, appellee here. Appellant in its brief argues against the validity of the trustee’s deed, that it contains no recital that the legal holder of the note secured by the trust deed applied to the trustee or re *267 quested the trustee to advertise and sell the same. The abstract does not indicate that any such objection was offered by counsel for appellant to the admission of the trustee’s deed. At least, there is no specific objection of this sort contained in the abstract. The trustee’s deed is too meagerly abstracted to determine whether it does or does not contain such a recital, but by reference to the original record there appears a notice of trustee’s sale, containing the following:
“Now, therefore, at the request and direction of the legal holder and owner of said promissory bond, * * * I, W. H. Lanning, trustee, do hereby give public notice”
of the sale. Immediately preceding this notice of the trustee’s sale, which was set out in full in the trustee’s deed, appears the following by way of introduction to the aforesaid notice:
“A certified copy of said advertisement is here incorporated and made a part of this deed,”
meaning the trustee’s deed. Moreover, reference to the bill of exceptions discloses that the trust deed provides for the sale of the land by the trustee,
“In case of default of payment of said bond or any part thereof or interest thereon,” •
and the trust deed does not appear to provide for or require that the legal holder should, as a condition precedent to the sale, make application, to the trustee to make the sale. In this respect the trust deed involved in this case is unlike the trust deed before the court in Bent-Otero Improvement Company v. Whitehead, 25 Colo., 354, cited and relied upon by the appellant. We conclude, therefore, that appellee’s title to the land involved here was established, unless the same was extinguished by *268 two certain tax deeds offered'in evidence by appellant-for the purpose of establishing, title in itself.
2. The two tax deeds offered by defendant were based upon one and the same sale. The second tax deed is denominated or referred to as a correction deed, and was issued after this action was begun. The first tax deed, offered by defendant, shows upon its face that the county clerk transferred to the defendant the tax certificate upon which the said tax deed was based, on April 2, 1901, said tax certificate having been originally issued to the county by the treasurer on a tax sale begun on the 5th day of October, 1896. This would invalidate the tax deed, as the county clerk possessed no authority to make the assignment of the tax certificate more than three years after its date. — Lambert v. Scott, No. 7173, 53 Colo., 357. The said tax deed was also void on its face for the further reason that it nowhere appears by the recitals or on the face thereof upon what days the land had been exposed to public sale by the treasurer. It nowhere appears on the face of the deed that the treasurer passed the sale of the land because of failure of bids, from day to day until the last day of the sale. It is ruled in Charlton v. Toomey, 7 Colo. App., 304, that before land may be legally bid in by the county, it must, after being first offered be continually offered from day to day until the sale is concluded, and that the county can only become a purchaser of the entire tract in default of an outside bid, after the same has been offered each day. It is also held in the Charlton case that it must appear affirmatively by the recitals of the instrument, that is, the tax deed, that every preliminary step required to divest the title of the owner was regularly taken as prescribed by law.
The second or correction tax deed offered by the *269 defendant disposes of the matter of the assignment of the tax certificate by simply reciting that,
“The said county of Yuma did heretofore sell, assign and deliver unto it, the said Empire Eanch and Cattle Company, the said certificate of purchase.”
Defendant having offered both tax deeds, we are at liberty, indeed it is our duty, to construe them together, and therefore, we may fairly assume from what appears in the first tax deed, that the tax certificate referred to in the second tax deed was also assigned by the clerk, nothing whatever appearing in the second tax deed to negative this presumption. The second tax deed recites that the tax sale was begun on the 5th day of October, 1896 (in this respect the two tax deeds agree), and further that:
“Said treasurer having passed such real property from time to time until the last day of the sale * * * did bid off at said sale for and in the name of the county of Yuma * * * the premises herein described.”
It will be noted that this -recitation does not state that the treasurer passed the real property from day to day, but “from time to time and until the last day of the sale.” It nowhere appears on the face of the deed that the first day of the sale and the last day of the sale were not one and the same day. Moreover, the first tax deed, as abstracted, recites that the Empire Eanch and Cattle Company had' deposited with the treasurer of said county the taxes assessed on said property since the date of the sale thereof, but does not recite the amount of such subsequent taxes. In the abstract of the second tax deed appears no statement whatever concerning the amount of the subsequent taxes, but an examination of said deed, as the same appears in the bill of exceptions, shows the *270 same defect last pointed out in connection with the first tax deed. —Barnett v. Jaynes, 26 Colo., 279; Carnahan v. Siebert Cattle Co., 34 Colo., 257.
3. Although the abstract recites that the first tax deed was acknowledged, reference to the original record does not support this statement. The purported acknowledgment of this deed reads as follows:
“I hereby certify that before me, J. B. Campbell, clerk of the county court in and for said county, personally appeared the above named J. "W. Cloyd, treasurer of said' county, personally known to me to be the treasurer of said county, at the date of the execution of the above conveyance, and to be the identical person whose name is affixed to and who executed the above conveyance as treasurer of said county for the purposes therein expressed. Given under my hand and seal this 10th day of April, A. D. 1901.”
It will be observed that the clerk does not certify that the treasurer “acknowledged the execution of the same to be his voluntary act and deed,” as provided by Section 3901, M. A. S., or that he acknowledged the deed at all. For the reasons stated, the trial court properly sustained the objection made by appellee to the introduction of the two tax deeds.
4. Counsel for appellee in this, and in other cases of similar character in which he appears, contends that a trial court has no authority by its decree to cancel tax deeds offered as evidence, but excluded on the ground of invalidity.' In his brief he states.his position thus:
“When the court excluded those two tax deeds as evidence they were out of the purview of the court, and thereafter had' no more authority to adjudicate in relation to them than any other deeds which were not offered in evidence.”
*271 And again lie says:
“Had the defendant taken no appeal so as to preserve the record of this offer of evidence by bill of exceptions, we wonld have no knowledge whatever of those deeds. They wonld nowhere be connected with the case. ’ ’
But in this respect there is no distinction between a document offered and admitted in evidence and one offered and excluded — neither can be made a part of the record, except by bill- of exceptions. This case was tried to the court without a jury. We perceive no difference in the jurisdictional power of the court over an exhibit of this sort where the court formally and finally, at the moment it is offered as evidence, rules it void and therefore inadmissible, than over an exhibit that is admitted and thereafter held by the court to be invalid. Whenever a trial court without a jury, in a case of this character, renders its judgment and enters its decree in favor of the owner of the fee, it necessarily holds the tax deeds void as against the fee owner, and it matters not, as we viewit, when this adjudication as to the invalidity of the tax deed is made, whether before or after its admission in evidence. The admission in evidence of the deed, in the course of a trial without a jury, is not necessarily a final ruling by the judge upon the validity of the deed. By admitting it (when this course is pursued) the trial court simply holds in abeyance its final judgment upon the deed. At least, this must be true where the final judgment goes against him who, relying upon the deed for his title, offers it in evidence.
In an action in ejectment, it is the duty of the court to cancel void tax deeds, where it is made to appear either by the pleadings, or without objection by the proof, that the action is one brought for the recovery of land sold for taxes. The duty of the court in this *272 behalf arises from the requirements of Sec. 5733 E. S., which reads in part as follows:
‘ ‘ When the recovery is effected in all cases the value of'the improvements, etc., made on the land so sold, and all taxes paid after the sale thereof, with interest thereon at the rate of fifteen per cent per annum, shall be ascertained by the jury trying the action for the recovery, and paid by the person or jjersons recovering the same, before he, she or they shall obtain possession of the land so recovered.”
As was said in Rustin v. M. M. & T. Co., 23 Colo., 358:
“It would be illogical and unjust to require the owner to refund the subsequent taxes, and at the same time, to allow the purchaser to hold the cloud of the tax deed upon his title.”
5. Counsel for appellant discusses in his brief the seven year statute of limitations, but under the answer, which, as we have stated, consisted solely of a general denial, it is not necessary for us to consider this contention,. since appellant was not in a position to rely upon the statute of limitations.—Webber v. Wanamaker, 39 Colo., 431; Chivington v. Colorado Springs Co., 9 Colo., 603.
In some way, probably through inadvertence, the trial court in its decree cánceled one tax deed that had not even been offered in evidence, and which was in no manner referred to in the pleadings, and also canceled the second or correction tax deed, to which we have hereinabove referred, although the last named deed included several tracts of land not in any way involved in this suit. The decree should be so corrected as to limit its effect entirely to the northwest quarter (%) of section twenty-four (24), township five (5) north, range *273 forty-eight (48) west — the only' land involved in this action. It is doubtless the law that the decree of a trial court could not operate upon or in any manner affect real property not before the court, but, inasmuch as the decree specifically names other property or deeds, giving the book and page of the county record where the same appear, it might be that the error in the decree would occasion, serious embarrassment to the holder of the tax deeds on these other properties. The cause is therefore remanded, with directions to the trial court to so modify its decree as to limit its effect to the land described in the complaint, and, as thus modified, the decree of the trial court is affirmed.
Decided November 11, A. D. 1912.
Rehearing’ denied January 13, A. D. 1913.

Judgment Affirmed.