[No. 3891.]

## SCHNEIDER ET AL. v. HURT ET AL.

1. TAX TITLE—*Sale to County—Subsequent Taxes.* One who purchases from the county a tax purchase certificate is not entitled to a deed until he has paid all taxes subsequently assessed upon the lands.

2. LANDLORD AND TENANT—*Tenant Acquiring an Adverse Title.* If the lands are sold for a tax which the tenant has covenanted to pay he cannot lawfully acquire the tax title.

And where he purchases from the county a certificate of sale for a tax which he was not under obligation to pay, he does not entitle himself to a deed, upon such sale, by the payment of the subsequent taxes which he has covenanted with his landlord to pay; because he pays these, and must pay them, not for himself, but for his landlord; whereas, to entitle himself to such tax deed, he must have paid said subsequent tax for himself alone.

3. TAX TITLES—*Sale to County—Assignment of Certificate.* Under chapter 143 of the Laws of 1893, and sec. 6 of chapter 4 of the Laws of 1894, where lands are purchased by the county, at tax sale, the treasurer may assign a certificate at any time after the sale is made, and the clerk, at any time within three years from the date of the sale.

The assignee must in either instance pay all taxes which are due and unpaid at the date of the assignment. If any such tax has been paid by the owner, or any third person, the assignee is not required to repeat the payment.

*Error to the Saguache District Court.* HON. CHAS. C. HOLBROOK, Judge.

Mr. M. W. PURCELL, Mr. JOHN I. PALMER, and Mr. SAM H. KINSLEY, for plaintiffs in error.

Messrs. GOUDY & TWITCHELL, and Mr. J. H. BURKHARDT, for defendants in error.

MORGAN, Judge.

Original opinion modified; rehearing denied.

Writ of error to the district court of Saguache County to reverse a judgment, in favor of the defendants, in an action, begun March 9, 1907, to quiet the title and to cancel a tax deed to a quarter-section of land, and to set aside a subsequent conveyance thereof by the grantee in the tax deed. The amended complaint charges that one of the defendants purchased a tax sale certificate of purchase for the land, from the county, and took a tax deed thereupon, during the life of a lease given by the plaintiff as lessor, to him as lessee of the said land.

The sole contention of the plaintiff in error is that the relation existing between the lessor and the lessee, *under the lease in this case,* destroys the validity of the tax deed and the subsequent conveyance made by the lessee, who took the tax deed, to the other defendant.

The lease was made January 16, 1899, and provides that the lessee shall pay for the use of the land from March, 1899, to March, 1903, the taxes for the years 1899, 1900, 1901 and 1902, and pay $20 a year in cash, and keep the fences in repair, with the other usual provisions of an ordinary lease. The land was sold November 23, 1899, for the taxes of 1898, to the county, and the certificate of purchase was thereafter assigned to the lessee, on August 4, 1900, the same day that he paid the taxes for 1899, as provided in the lease. The tax deed was received and recorded on November 26, 1902.

The lessee did not agree to pay the taxes of 1898, to collect which the sale was made, and it is not necessary to decide, as requested by appellant, whether the mere existence of the naked relation of landlord and tenant would invalidate the tax deed, because of the appearance of certain facts and circumstances peculiar to this case, and to the lease, making it unnecessary to determine such

abstract and isolated proposition. This lease involves more than that naked relation. There is no conflict in the authorities that, if it is the duty of the tenant to pay the taxes for which the land was sold, he could not legally acquire the tax title on such sale.—24 Cyc., 94. He would not be permitted to take advantage of his own failure to do that which he agreed to do. *Nullus commodum capere potest ex sua injuria propria.*—Coke-Litt., 148. Neither can the tenant take advantage of his failure to perform any other obligation imposed upon him by his lease, to the detriment of his landlord.

Under the express terms of the lease in this case, the lessee was obligated to pay the taxes for the years 1899, 1900, 1901 and 1902, for *his landlord,* and, as he bought the certificate of purchase, aforesaid, from the county, he was required under the statute to pay, for *himself,* the taxes assessed and due and unpaid on the property since the date of the sale, as a condition precedent to his right to acquire such certificate.—*Carnahan v. Sieber Cattle Co.,* 34 Colo., 257, 260, 82 Pac., 592; *Barnett v. Jaynes,* 26 Colo., 279, 57 Pac., 703; *Empire Ranch & Cattle Co. v. Neikirk,* 27 Colo. App., 392, 394, 128 Pac., 468; *Empire Ranch & Cattle Co. v. Howell,* 23 Colo. App., 265, 129 Pac., 245. And until all taxes subsequent to the date of the certificate are paid, "the person taking the assignment of the certificate is not entitled to a deed."—*De Ford v. Smith,* 23 Colo. App., 78, 80, 127 Pac., 453.

The lessee paid these subsequent taxes in his own name and interest, as alleged in the answer, and shown by the record.

Now, as it was his duty to pay these identical taxes for his lessor, he could not profit by a violation of that duty, and pay them himself, in his own interest, and for the purpose of obtaining his landlord's title to the land through a tax deed. He could not pay them in both capacities. The same maxim applies as above, and, "No

one can change his purpose to the injury of another." A
species of estoppel arises. *Allegans contraria non est
audiendus.* The lessee alleged in his answer that he had
performed all the conditions of the lease that it was his
duty to perform, and yet in the same pleading he asserts
the validity of a tax deed founded upon his violation
thereof, that is, the payment by him, for himself, of the
taxes of 1899, 1900, 1901, and 1902, instead of for the
lessor. A man will not be heard to "blow hot and cold"
at the same time.—Broom's Legal Maxims, pp. 132 and
237.

On petition for rehearing, appellant contends that
when the lessee purchased the certificate and took an
assignment from the county clerk, under the act of 1894,
(Sess. Laws 1894, p. 47), he then had all the rights of
an original purchaser at the tax sale, and, therefore, was
not required to pay any subsequent taxes. The portion
of that section of the statute relied upon is as follows
(italics mine):

"Any person may at any time within three years
from the date of such certificate deposit with the treas-
urer of such county the total amount due upon such cer-
tificate, due and unpaid and interest thereon since the
date of such certificate, whereupon the clerk of the coun-
ty shall assign such certificate to such person, and the
*treasurer shall give such person a receipt for any and all
subsequent taxes and interest paid by such person and
thereupon such* person shall be entitled to all rights and
privileges, the same as though he were an original pur-
chaser at the tax sale. No taxes assessed against any
lands purchased by the county under the provisions of
this section shall be payable until the same shall have
been derived by the county from the sale or redemption
of such lands."

In the cases above cited the courts have construed
this statute, as shown by my italics, to mean that *when*

the treasurer gives the receipt for subsequent taxes, *thereupon* and *thereafter,* the assignee has the rights of an original purchaser. Such construction is in harmony with the following part of the act of 1893 (Sess. L. 1893, p. 429), authorizing the treasurer to assign the certificate:

"Whenever any lot or parcel of land, interest therein, or improvement on land, shall be bid in by or for the county at any tax sale, pursuant to the provisions of this act and a certificate of purchase shall be made to such county therefor, the treasurer may sell, assign and deliver such certificate to any person who shall desire to purchase the same, upon payment to the treasurer of the amount for which such property was bid in by the county, with interest and penalties accrued thereon from the date of sale together with the sum of one dollar for making such assignment; also the taxes assessed thereon since the date of such sale, or for such sum as the board of county commissioners at any regular meeting may decide."

Appellant contends that such construction in the first two cases above cited is *obiter dicta:* however this may be, it has been followed and approved; and construing these two statutes together, as done in *Lovelace v. Tabor M. & M. Co.,* 29 Colo., 62, 66 Pac., 892, such construction seems to be the only plausible one; and, therefore, it must be concluded that the treasurer may assign a certificate at any time after it is made, and the clerk, also, may make the assignment at any time within three years after its date, but, in either instance the assignee must pay the taxes on the land that have been assessed upon it, and are due and unpaid when the assignment is made, but, if the owner, or anyone else, has paid any of such subsequent taxes, the assignee would not be required to pay them again, as held in *Barnett v. Jaynes, supra,* that is, if the treasurer should accept payment without redemp-

tion from the sale in a case where the county held the certificate.

Furthermore, the lessee as heretofore stated, did actually pay these subsequent taxes (paying the 1902 taxes after the tax deed was recorded), and took the tax deed before the lease expired, and claimed the property as his own. In so doing he violated the terms of the lease, and took advantage of such violation: (1) by paying the taxes for his own benefit and appropriating to his own use and becoming the beneficiary of such payments, and (2) by not paying the taxes for the lessor, as part of the consideration for the lease, thus defaulting in his payments thereupon and hiding such default from the lessor through his duplicity.

Reversed and remanded with directions for the lower court to enter judgment for the plaintiffs in accordance with this opinion.

*Reversed with Directions.*

Decided December 8th, A. D. 1913. Rehearing denied, February 11, A. D. 1914.